Argued July 12, affirmed October 3, 1922.

## ECKHARDT *v.* JONES' MARKET.

(209 Pac. 470.)

**Master and Servant—Meat Market Business Held "Hazardous" Within Compensation Act Precluding Common-law Defenses.**

1. Where part of defendant's meat market business was the manufacture of sausage by the use of power-driven machinery operated in plaintiff's workroom, the business was "hazardous" as defined by Workmen's Compensation Act (§§ 6614, 6617, 6619, Or. L.), and defendant, having rejected the provisions of the act, was precluded by Section 6620 from urging the defenses of contributory negligence and assumption of risk in plaintiff's action for damages for injuries to his hand by a bone in a ham thrown to him, and liability could not be avoided on the ground that he was not actually engaged in the operation of the machinery when the injury occurred.

**Master and Servant—Evidence of Negligence in Blocking Passage Held for Jury.**

2. In an action for injuries to an employee's hand lacerated by a bone in a ham thrown to him, evidence of employer's negligence

---

1. Occupations or employments within purview of Workmen's Compensation Acts, see notes in **Ann. Cas.** 1917D, 4, 33, 38, 39, 42.

in permitting a passageway to become blocked with barrels, so that plaintiff and his assistant were compelled to pitch hams, *held* for the jury.

**Master and Servant—Admission of Evidence as to Conditions not Alleged Held not Error.**

3. In an action for injuries to an employee's hand by a bone in a ham thrown to him, it was not error to permit him to testify that the light in the room was not very good, and that the floor was greasy and slippery, though such conditions were not alleged, there being no claim that either of these conditions influenced his conduct, and the testimony, if it had any value, tending to show that he was not negligent.

From Multnomah: JOHN McCOURT, Judge.

Department 1.

This is an action for damages for personal injuries. The complaint alleges substantially that the defendant on December 24, 1918, was operating a meat market wherein a factory or workshop was maintained, in which power-driven machinery was used and manual labor exercised by way of trade for gain in making sausage for sale, and over which premises the defendant had the right of control and the right of access thereto; that prior to the injury complained of, the defendant elected not to become bound by the provisions of Chapter 112 of the Laws of 1913 and the amendments thereto; and that it did not contribute to the state industrial accident fund and was not working under said act at the date of the injury. It is further alleged:

"That on said twenty-fourth day of December, 1918, the plaintiff was in the employ of the defendant and was known as a sausage-maker and was employed to and did work in a certain room or place where power-driven machinery was used for making sausage as aforesaid and was employed to and did work with and around power-driven machinery in making sausage.

"That about 10 A. M. on said twenty-fourth day of December, 1918, the plaintiff, as part of his duties

in said workshop or factory, was loading a truck
maintained by the defendant with pickled hams; that
said duties were incidental to the duties of the plain-
tiff as sausage-maker; that said hams were stored in
a storeroom maintained by the defendant and were
placed in round vats about four feet high, standing
against each other in rows along the sides and ends
of the room and in three rows through the middle of
said room; that a passageway was left around the
room between the vats along the sides and ends of
said room and the rows through the middle of said
room, which passageway was of just sufficient width
to permit the truck, which the plaintiff was loading
as aforesaid, to pass through and be loaded from said
vats; that prior to said twenty-fourth day of Decem-
ber, 1918, the defendant negligently, carelessly and
without regard to the welfare and safety of its em-
ployees, caused the said passageway along one end
of said room to be filled with barrels piled on top of
each other so that the truck could not be taken along
the passageway on that end of said room, and an em-
ployee could not pass through said passageway or get
to the vats of pickled hams along that end of said
room without climbing over said barrels; that the said
defendant negligently, carelessly and without regard
to the welfare or safety of its employees piled said
vats of pickled hams in said end of said room in
which said passageway had been blocked as aforesaid,
on top of each other; that, while said room and vats
and passageway were in said condition, the plaintiff
and one other employee of the defendant were re-
quired to get a truckload of hams from the middle vat
on the top row on that end of said room on which
said passageway had been blocked as aforesaid and
in order to do so, the fellow-employee of the *defend-
ant* was required to climb over the barrels piled in
said passageway and stand on top of said barrels and
lower row of vats and take said hams from said mid-
dle vat and throw them to this plaintiff, a distance of
about ten feet, and this plaintiff was required to stand
in the small space left by the curvature of two vats
nearest the passageway on the side of said room and

between those vats and the truck, the said truck being of sufficient size to fill said passageway, leaving only the small three-cornered space between the said truck and said two vats in which the plaintiff could stand; that said space in which the said plaintiff was required to stand was so small that he was in a cramped and awkward position and said vats and barrels were in his way; that the brine in which the hams were placed was so cold that the hands of the plaintiff and his fellow-employee became so cold, numbed and awkward that it was very difficult and extremely hazardous to handle said hams in said manner; that said hams were large and heavy and that they had sharp bones projecting from them and these bones would pierce the hands of the employees without negligence on their part, when they were so cold and numbed that they would not know of it at the time; that said bones, when piercing the flesh, have a strong tendency to produce blood poisoning, which fact was known to the defendant, and that one of said bones did pierce the palm and finger of the left hand of the plaintiff without any fault or negligence on his part whatsoever, and the plaintiff contracted blood poisoning in said hand as a result thereof.

"That the foreman in the employ of the defendant and under whom the plaintiff was working at the time of said injury had the habit of urging his workmen to excessive speed and that the plaintiff and his fellow-employee knew at all times that they must work with utmost speed, and were working under those conditions at said time and place when said injury was received; that the defendant was negligent in requiring its employees to work at such speed in entire disregard of their welfare and safety; that it was negligent in storing said pickled hams in vats on top of each other in said manner without providing sufficient safe means for its employees to handle the same; that it was negligent in causing the passageway across the ends of said room to be blocked as aforesaid; that it was negligent in requiring the plaintiff and his fellow-employee to load said hams when said passageway

was blocked as aforesaid; that the defendant knew that bones from pickled hams have a strong tendency to cause blood poisoning when piercing the flesh, and that the brine in which said hams were placed was so cold that it numbed the hands of those handling the same, making them difficult and awkward to handle, and the defendant was negligent in not providing safe means and sufficient room for handling the same, which negligence on the part of the defendant was the cause of the aforesaid injury to the plaintiff.

"That as a result of the said bone piercing the hand of the plaintiff as aforesaid, the plaintiff contracted blood poisoning in said hand and as a result thereof it became necessary, in order to save the life of the plaintiff, to remove the middle finger of his left hand and that the remaining fingers and palm of said hand were left stiff and entirely useless and the plaintiff has suffered great mental and physical pain and has been in the constant care of physicians since the twenty-fourth day of December, 1918, and has been unable to follow his occupation or perform any work whatsoever since said day and his hand has become so useless as a result of said poisoning, that he is permanently disabled from resuming or plying his former trade."

Plaintiff claimed damages in the sum of $10,282.60, including expenses for hospital fees and medical attendance.

The defendant answered, denying that it was engaged in hazardous occupation or doing work which involved risk or danger to its employees. It admitted that it was not operating under the Workmen's Compensation Act and that the plaintiff was in its employ at the date of the injury. All other allegations of the complaint were denied by the answer.

For a further and separate defense the defendant, among other matters, alleged:

"That on said date, this plaintiff was assisting to take hams out of brine and passing them to a fellow-

employee, and while handling said ham, one of the bones of said ham pierced the palm of plaintiff's hand, causing a small injury which later on, defendant is advised and believes, turned into blood poisoning. That this plaintiff, at the time of said accident and injuries, and during all the times that he was employed by this defendant, and during all of the times mentioned in plaintiff's complaint, was engaged in nonhazardous work and the work which plaintiff did during all the times mentioned in his said complaint did not involve any risk or danger, but the risk and danger of handling hams was an open, obvious and apparent risk and this defendant alleges that this plaintiff assumed all of the risk and danger from handling hams.

"That this defendant owns and operates a meat market at the corner of Fourth and Alder Streets in Portland, Oregon. That the business of this defendant is a nonhazardous occupation and does not involve risk or danger to any of the defendant's employees, and particularly this plaintiff. That this defendant, in conducting said meat market, business, does not now and never did use any dangerous or hazardous machinery or appliances, and said occupation involves the cutting of meats by hand power, smoking meats and other work of a like nature."

A further separate defense pleaded contributory negligence on the part of plaintiff.

The new matter in the answer was put at issue by a reply and the case was heard before a jury, which returned a verdict for the plaintiff. From judgment upon that verdict the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Senn, Ekwall & Recken,* with an oral argument by *Mr. F. S. Senn.*

105 Or.—14

For respondent there was a brief over the names of *Messrs. Murdock & Crum* and *Mr. C. M. Idleman,* with an oral argument by *Mr. V. A. Crum.*

McBRIDE, J.—It becomes important at the outset to inquire as to the extent to which an employer may be held liable under the provisions of the Workmen's Compensation Act in those cases where he has expressly notified the Industrial Accident Commission that he declines to avail himself of its provisions. In the case at bar the defendant had expressly notified the commission of its intention not to be so bound and therefore, by the provisions of Section 6620, Or. L., it is deprived of the defenses of assumption of risk and contributory negligence, except so far as the jury may take contributory negligence into consideration as reducing the *quantum* of damages.

1. The principal question, therefore, is whether or not the defendant belongs to that class of employers who were required to accept or reject the provisions of the act, that is to say: Is the business carried on by defendant of such a character as to come within the term "hazardous" as defined by the statute? Subdivision *a* of Section 6617 specifies as hazardous occupations, "factories, mills and workshops where power driven machinery is used." In defining a factory, etc., the following language is used:

" 'Factories' mean undertakings in which the business of working at commodities is carried on with power-driven machinery, either in manufacture, repair or change, and shall include the premises, yard and plant of the concern.

" 'Workshop' means any plant, yard, premises, room or place wherein power driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise," etc.: Section 6619, Or. L.

It is further provided that employers and employees who are engaged in an occupation partly hazardous and partly nonhazardous shall come within the terms of the act, as if such occupation were wholly hazardous: Section 6614, Or. L.

It is shown by the evidence that part of the business carried on by the defendant was the manufacture of sausage through and by the use of "power-driven machinery," and by the terms of this act, this part of the business is a hazardous occupation. It may not usually be so in fact, but it is always so in law, so far as the act we are now considering is concerned. Part of plaintiff's duties, in fact the greater part was performed about and upon this machinery and in the room where it was operated, the work in which he was engaged when the accident occurred being only occasional, perhaps four or five hours during the week. Upon the undisputed testimony we must hold that for the purposes of this case the defendant was as a matter of law engaged in a hazardous occupation, and that having rejected the provisions of the Workmen's Compensation Act, it is precluded from urging the defenses of contributory negligence and assumption of risk; and the fact that plaintiff was not actually engaged in the operation of power-driven machinery when the injury occurred will not of itself relieve the defendant from liability, provided the other elements of recovery are present: *Morin* v. *Nashua Mfg. Co.,* 78 N. H. 567 (103 Atl. 312); *Casey* v. *Frank Jones Brewing Co.,* 79 N. H. 42 (104 Atl. 454).

Laying the defenses of contributory negligence and assumption of risk out of the case, we are satisfied that there was sufficient evidence of negligence on the part of defendant in the matter of furnishing plain-

tiff with a reasonably safe place to work, to take the case to the jury.

2. We have no right to pass upon the comparative weight of the testimony introduced by the respective parties. That was a matter for the jury, and a recital in detail of the testimony introduced by the plaintiff would be unprofitable. Suffice it to say that it followed closely and substantially sustained the allegations of the complaint and indicates that through the negligence of defendant in permitting the passageway to become blocked with barrels, the plaintiff and his assistant were compelled to use the method outlined in the complaint in order to accomplish their work, and that there was under the circumstances no other way in which they could accomplish it with the celerity required of them by their employer. Had the passageway been kept free from congestion as it should have been, plaintiff's assistant would not have been compelled to pitch and plaintiff to catch the heavy hams thrown from a distance of ten feet, and plaintiff would not have been injured.

3. Error is predicated upon the court's having permitted plaintiff to testify over defendant's objection that the light in the room was not very good and that the floor was greasy and slippery. It is urged that this testimony was incompetent because the absence of light and the slippery condition of the floor were not alleged in the complaint as elements of negligence. It is difficult to see how this testimony could have affected the case one way or the other, as there was no claim that either of those conditions influenced plaintiff's conduct in any way, and it must have been patent that neither of such conditions caused plaintiff's hand to be lacerated when he caught the hams thrown to him. It was a description of conditions

surrounding the accident, which if it had any value at all only tended to show that under all the circumstances plaintiff was in the exercise of due care or at least was not negligent. In this respect the case is similar to *Miller* v. *City of St. Paul,* 38 Minn. 134 (36 N. W. 271), which see.

Error is also predicated upon the giving by the court of instructions excluding the defenses of contributory negligence and assumption of risk, but that objection is based upon a view of the law which we have already held to be erroneous.

The judgment is affirmed.                            AFFIRMED.

BURNETT, C. J., and HARRIS and RAND, JJ., concur.