Argued June 10, reversed November 13, petition for
rehearing denied December 10, 1968

CONCANNON, *Respondent, v.* OREGON
PORTLAND CEMENT COMPANY,
*Appellant.*
447 P. 2d 290

[ 1 ]

Roland F. Banks, Jr., Portland, argued the cause for appellant. With him on the briefs were Mautz, Souther, Spaulding, Kinsey & Williamson and James F. Spiekerman, Portland.

Carl R. Neil, Portland, argued the cause for respondent. With him on the brief were Krause, Lindsay & Nahstoll and William H. Poole, Portland.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is an action to recover damages for personal injuries plaintiff claims to have sustained in 1964 as a result of breathing cement dust while working at defendant's cement plant. Defendant appeals from a judgment entered on a verdict in favor of plaintiff.

Plaintiff worked for defendant as a machinist for 17 years prior to 1964. Defendant rejected coverage under the Workmen's Compensation Act. As a part of his work plaintiff was required to make repairs inside

dust collectors in which cement dust produced in the cement manufacturing process was collected. To prevent the inhalation of the dust while working within the dust collectors plaintiff wore a filtering mask which was supplied by defendant.

Plaintiff was stricken with bronchial asthma which rendered him permanently disabled. He contends that the impairment to his health resulted from the continuous exposure to the cement dust for a period of approximately 33 hours in one week and that defendant was negligent in failing to provide plaintiff with a safe air supply system while being subjected to the cement dust. The complaint also contains an allegation which, in effect, charges defendant with a violation of the Employer's Liability Law (ORS 654.305 to 654.335) in that defendant failed "to provide every device, care and precaution which it was practicable to use."

Defendant contends (1) that it is exempted from the Employer's Liability Act (ELA) by ORS 656.804 (2), and (2) that it is not liable in a common law action for failure to provide safe equipment because it was not negligent.

ORS 656.804 (2), as it read at the time of plaintiff's alleged injury,[1] provided as follows:

"(2) The common law meaning of the term occupational disease is not changed by ORS 656.802 for employes of employers who have rejected ORS 656.002 to 656.590 or who are engaged in nonhazardous occupations, nor shall ORS 654.305 to 654.335 [the Employer's Liability Act] be applicable thereto to actions arising out of occupational disease."

[1] ORS 656.804 was amended by Or Laws 1965, ch 285, § 87.

The trial court ruled as a matter of law that plaintiff's impairment was not an occupational disease and that therefore the provision of ORS 656.804 (2) making the ELA inapplicable to "actions arising out of occupational disease" was not operative in the present case.

 The trial court erred in ruling that plaintiff's impairment was not an occupational disease. ORS 656.804 (2) in effect provides that in the application of that section the term "occupational disease" is to be given its "common law meaning." Although it is impossible to draw a sharp line around the so-called "common law meaning" of occupational disease, we think plaintiff's affliction would fall within the generally accepted meaning of occupational disease prevailing at the time of the adoption of ORS 656.804(2). Generally a disease is an "occupational disease" if the employment conditions actually cause the employee's disability and the risk of contracting the disease under those conditions is in excess of the risk attending employment generally.[⊕] Plaintiff's affliction falls within this definition.

The question then is whether, as defendant con-

---

[⊕] See 1A Larson's Workmen's Compensation Law, § 41.32 et seq. (1967). In a note in 22 Minn L Rev 77, 79 (1937), the following definition of occupational disease is distilled from the cases up to 1937:

"It is apparent that the distinguishing characteristics must be found, not in the pathological nature of the disease, but in the manner and incidents of its contraction. The employment must be a causal factor in the contraction of the disease, but the mere existence of such causal connection is not enough to make the disease occupational. To be classified as a disease peculiar to a particular occupation, the risk of contraction to employees in that occupation must be in excess of the risk attending employment in general. Thus far all definitions are undoubtedly in accord, but some courts have introduced additional requisites as to which there is little agreement."

tends, ORS 656.804 (2) precludes plaintiff from recovery under the ELA for an occupational disease.·

■ The principal difficulty in the interpretation of the statute stems from the use of the word "thereto" in the clause which reads "nor shall [the ELA] be applicable thereto to actions arising out of occupational disease." The most proximate antecedent of the word "thereto" is "employes of employers who have rejected [the Workmen's Compensation Act] or who are. engaged in nonhazardous occupations." If the statute is so construed, defendant would not be liable under the ELA in the present case. Defendant's liability, if any, would be limited to liability upon the theory of common-law negligence.

We have concluded that ORS 656.804 (2) must be given the construction just suggested. We recognize the objections which can be levelled at this manner of reading the statute.⑨ But we have been unable to find any other antecedent to which the term "thereto" could sensibly refer. Plaintiff argues that the reference is to the occupational disease law and its definition of "occupational disease" for Workmen's Compensation purposes. According to this interpretation the statute would read "nor shall [the ELA] be applicable to. the Occupational Disease Law and its definition of 'occupational disease' in actions arising out of occupational disease." Using this antecedent, plaintiff construes the statute as limiting the cause of action under the ELA only to the extent that employer would not be subjected to the statutory definition of "occupational disease" but that defendant would be liable under the

---

⑨ As we have construed the statute, the word "thereto" would not be essential; the meaning would be the same if the word were deleted.

ELA in actions for occupational disease as defined by the common law.

As defendant points out, plaintiff's interpretation forces one to search outside of ORS 656.804 for the referent, when normally one would seek to find the referent of "thereto" within the statute itself. Although there is no rule of statutory construction which precludes the incorporation of meaning found in another statute, there is nothing in ORS 656.804 nor in anything that we can find outside of the statutes which indicates that the Legislative Assembly intended the statute to carry the meaning plaintiff has suggested.

In fact the legislative history of ORS 656.804, although scant, indicates that the statute probably was intended to have the effect urged by defendant. The sentence under construction did not appear in the original bill in the form it passed the Senate. See Senate Bill 284, 42nd Legislative Assembly (1943). That sentence was added by the House Committee on Labor and Industry on the last day of the 1943 legislative session. The bill was passed by the House as amended, sent to the Senate, referred to its conference committee, returned to the Senate and House with a do pass recommendation and passed by both those bodies.[①] This harried action apparently was the result of a last minute compromise in a dispute over whether jury trial would be allowed in appeals from rulings of the Commission on compensability of occupational diseases. See The Oregonian, March 10, 1943, § 1, p. 8, col. 1 and March 11, 1943, § 1, p. 13, col. 4 for articles referring to the jury trial dispute.

■ The meaning of the change indicated by the added sentence was expressed in the Oregon Labor

---

[①] 1943 Senate and House Journals 158; 164, 354, 362.

Press as follows: "The majority report * * * added a provision that relieves employers not under the state act of a degree of responsibility that maintains under the Employer's Liability Act." Oregon Labor Press, Friday, March 19, 1943, p. 1, col. 7. It is also interesting to note that in 1945 an effort was made to amend ORS 656.804. The Senate Committee on Labor and Industries introduced S.B. 87, 43rd Legislative Assembly (1945) which was entitled "A Bill For an act * * * providing that the Employer's Liability Act shall be applicable to employers who have rejected the compensation act in occupational disease cases." The bill purported to accomplish this objective by deleting the phrase "nor shall the provisions of the Employer's Liability Act be applicable thereto to actions arising out of occupational disease." Thus it appears that both the Oregon Labor Press and the Senate committee understood the 1943 Act to exempt rejecting employers from the ELA in cases arising out of occupational disease. We therefore interpret ORS 656.804 (2) to mean that an action does not lie under the ELA for a disease arising out of the plaintiff's employment.

It follows that if plaintiff is to recover it must be under a common law right of action for occupational disease. To make out such a cause of action plaintiff has the burden of proving that defendant was negligent in furnishing plaintiff with inadequate equipment. The standard measuring defendant's duty is stated in ORS 654.010, which codifies the common law duty of an employer to his employees:

"Every employer shall furnish employment and a place of employment which are safe for employes therein, and shall furnish and use such safety devices and safeguards, and shall adopt and use such practices, means, methods, operations and process

as are reasonably adequate to render such employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life and safety of such employes."

■ To fulfill his common law duty defendant is not required to meet the standard set up in the ELA, which makes it the employer's duty to use "every device, care and precaution which it is practicable to use." ORS 654.305. Defendant is required only to adopt methods which are "reasonably adequate" to safeguard its employees.[9]

■ There was evidence that the filtering mask supplied by defendant did not filter out some of the fine cement dust and that the mask would sometimes slip when the workman's face became sweaty permitting the cement dust to enter through the edges of the mask. It was necessary for the workman to leave the dust collectors from time to time in order to replace the filters in the mask. Defendant made available an adequate supply of filters for this purpose. New masks to replace the old were also available to the workmen. There was no evidence that plaintiff or the other workmen brought to defendant's attention the tendency of the masks to slip and permit the infusion of the dust. The filtering device furnished by defendant was purchased in a box which bore the following legend:

"PERMISSIBLE RESPIRATOR FILTER
FOR

DUSTS, AND PNEUMOCONIOSIS-PRODUCING
MISTS

---

[9] This difference in duty has been noted in our previous cases. See Kruse v. Coos Head Timber Co., 248 Or 294, 432 P2d 1009 (1967); Cox v. Al Peirce Lumber Co., 239 Or 546, 550, 398 P2d 746 (1965); Freeman v. Wentworth & Irwin, Inc., 139 Or 1, 11, 7 P2d 796 (1932).

APPROVAL (Seal of the Bureau of Mines) No. 2161

issued to

## WILLSON PRODUCTS DIVISION
Ray-o-Vac Company
Reading, Pennsylvania, U. S. A.

"Approved for protection against the inhalation of dusts that are not significantly more toxic than lead (dispersoids or particulate matter formed by the disintegration of solid materials by such processes as crushing, grinding and abrading), and pneumoconiosis-producing mists (liquid dispersoids formed by the disintegration of a liquid by such processes as spray coating and atomizing).

"Approved for assembly with BM-2102 or BM-2152 facepiece.

### CAUTION

"This filter removes only dispersoids from the air. It gives no protection against gases, vapors, or an insufficiency of oxygen."

It was established that cement dust was "not significantly more toxic than lead." Thus the filters were used by defendant within the scope of the approval indicated on the box.

It was reasonable for defendant to assume that the device it purchased had met governmental standards and would be adequate to remove the cement dust if the device was properly used. It was not shown that defendant was aware of any defect in the device or that it was being subjected to an improper use. Defendant was not aware that the mask was creating a risk of harm to those who used it.

There was evidence that at safety meetings the employees discussed the difficulty of working in the interior of the dust collectors. But it does not appear that these discussions did more than explore the need

for a more comfortable working environment. It cannot be said that through these meetings defendant was put on notice that the continued use of the filtering mask would endanger the health of those who used it.

■ Plaintiff called as a witness Professor Caldwell of the chemistry department of Oregon State University, who was asked on direct examination whether the type of mask furnished by defendant to its employees was suitable and efficient for the purpose for which it was employed by defendant. He responded, "In my opinion it is not. There are better protective devices available." This says only that the mask used by defendant was not suitable because there were other protective devices which were better. Defendant's failure to furnish a better device would be sufficient to establish the violation of his duty under the ELA but, standing alone, it does not constitute proof of a breach of defendant's common law duty.

The observation made in *Blust v. Pacific Telephone Co.*, 48 Or 34, 37, 84 P 847 (1906) is directly applicable to the present case:

> "It is unquestionably the duty of a master to use due care to provide suitable and safe materials, appliances and machinery reasonably well adapted to the work in hand, without endangering the lives and limbs of those employed to use the same, but he is not bound to provide the latest or most improved, but only such as are reasonably safe, and of a kind generally used for the purpose. If the appliances furnished or the method adopted by the master is reasonably safe and suitable for the purpose intended, he is not liable for a failure to furnish or adopt others believed by some to be less perilous [citing cases]."[©]

[©] See also Freeman v. Wentworth & Irwin, Inc., *supra*, and Cox v. Al Peirce Lumber Co., *supra*.

We are of the opinion that there was not sufficient evidence to permit a jury to reasonably conclude that defendant was negligent.

The judgment is reversed.

SLOAN, J., dissenting.

I cannot subscribe to the meaning given by the majority to ORS 656.804. Practical application of the majority decision will deprive an employee of a rejecting employer, like plaintiff, of any relief at all. He cannot obtain compensation from the Industrial Accident Fund and, because of the defense of assumption of risk, it is virtually impossible to recover in an ordinary action at law. The legislature could not have intended such a result and the statute should not be so read.

In order to better attempt to find a legislative intent for ORS 656.804 it is helpful to read the statute in the form in which it was originally passed, not as it is now codified. Oregon Laws 1943, ch 442, § 1, p 662 reads:

> "An occupational disease, as hereinafter defined, shall be considered an injury for employees of employers who have come under the provisions of chapter 17, title 102, O. C. L. A., except as otherwise provided for herein. The common law meaning of the term occupational disease for employees of employers who have rejected the act or who are engaged in nonhazardous occupations is not changed hereby nor shall the provisions of the Employers' Liability Act be applicable thereto to actions arising out of occupational disease."

The important language is: "The common law meaning of the term occupational disease for employees of employers who have rejected the act * * *."

If we attempt to find meaning to these words from the law as it existed elsewhere than in Oregon, then the statute becomes meaningless. This is for the simple reason that there literally was no common law action for occupational diseases, as those words were then generally defined. Bohlen, Right of Action for Occupational Disease, 1914, 63 Pa L R 183; Note, 22 Minn L R 78 (1938). What is important and what must be the subject of our concentration is the law of Oregon in this respect as it existed in 1943. The people who proposed this legislation, and those who opposed it and the legislators who weighed it were concerned with Oregon law and its then denial of any benefit to a workman afflicted with an occupational disease as it was then defined.

To glean the 1943 legislative intent we are not concerned with the statute as it was later codified nor are we concerned at all with later legislative definitions of occupational disease. It is worth particular emphasis to reiterate that to find the meaning of this statute we are only concerned with the rights of an employee of a rejecting employer as they existed in 1943. Whatever happened later by way of definition or otherwise, is not significant to the legislative preservation of that kind of an employee's rights as they existed in 1943. Therefore, the statute in question must be examined from the point of view of the reasons why the enactment of Chapter 442 of Oregon Laws 1943 was necessary and what purpose it was intended to serve. These considerations must be examined against the historical backdrop of the Workmen's Compensation Act, its design to benefit employees of both complying and rejecting employers and most importantly, perhaps, of the decisions of this court in respect to the Act as they applied to disease.

To start at the beginning, the 1913 enactment provided two forms of relief for the employee in a hazardous employment who was injured by accident in his employment. The favored relief was, of course, compensation benefits. But the employees of the rejecting employer were also benefited by Section 15 of Chapter 112 of Oregon Laws 1913 which removed all of the defenses to an action based on negligence. That policy of granting superior rights of action to the employee of the rejecting employer was, at the time of the 1943 Act, firmly entrenched in the then compensation law of this state. *Camenzind v. Freeland Furniture Co.*, 1918, 89 Or 158, 174 P 139; *Eckhardt v. Jones' Market*, 1922, 105 Or 204, 209 P 470; *Hoffman v. Broadway Hazelwood*, 1932, 139 Or 519, 10 P2d 349, 11 P2d 814, 83 ALR 1008. It could not be satisfactorily claimed that the 1943 legislators were unaware of this policy.

Another significant, relevant policy relative to the Workmen's Compensation Act had been developed by this court prior to 1943. That policy was first expressed in *Iwanicki v. State Industrial Acc. Com.*, 1922, 104 Or 650 at p 664, 205 P 990, at p 994, in the following statement:

"No one disputes that if an accident happens within the true meaning of the term, which brings on a subsequent disease, the ailment may be counted as part of the injury, but the initiative must be found in the suddenness and unexpectedness of what is termed 'accident.' It does not allude to the steady and imperceptible advance of disease in the human system. It would be competent, of course, for the legislature in the exercise of its police power and the usual care for those who toil, to provide compensation for occupational diseases, but it has not done so and we cannot read into the statute compensation for ailments which do not

come within the scope of an accident caused by violent or external means."

This was followed by many similar decisions, some holding that the complained of disease was caused by accident, others holding that the disease, as in *Iwanicki,* was occupational and not compensable or actionable as in *Nixon v. Hawley P. & P. Co.,* 1935, 149 Or 526, 41 P2d 807. For a comprehensive review of all of the cases see Lafky, Occupational Disease, 1962, 2 Will L J 16, and Lent, Non-Occupational Disease, 1962, 2 Will L J 24. It seems clear that by 1943 the meaning of the words "common law meaning of occupational disease" in Oregon referred to diseases that were developed only by imperceptible degrees over a long period of time for which no rights of compensation existed in any form. It did not refer to disease caused by accident. As later appears it was only the truly occupational form of disease that the legislature excluded from the benefits of the Employer's Liability Act.

It must be apparent that the purpose of the 1943 legislature was to bring into the Workmen's Compensation Act the ever-increasing number of employees who were seriously harmed by disease which this court had termed occupational. That is, the diseases which insidiously developed by extended exposure. In providing relief, the legislature was confronted with the sharp distinction between complying employers and by rejecting employers. To grant relief only to employees of complying employers would have only partially solved the problem. On the other hand, to have opened the benefits of the Employer's Liability Act to every kind of disease that might be activated at the place of employment would have created too great a

burden on the rejecting employer. The legislative committees studying the Act could have believed that the additional duties imposed by the Employer's Liability Act would have permitted actions far beyond any benefits they intended to grant to employees covered by compensation benefits.

The language used by the legislature to prevent this result was inept, almost meaningless and certainly confusing. However, when ORS 656.804 is read, as above suggested, against the background of the fixed policies of the compensation act, a sensible intent and meaning can be found. That intent was, to give to non-covered employees a cause of action, either within or without the Employer's Liability Act as the hazards of the work may dictate, for disease resulting from accident. Restated in reference to the statutory language, "the common law meaning of the term occupational disease is not changed * * *," is to say that the common law the legislature had in mind was the law developed by this court. A disease caused by accident was actionable, as in *Nixon v. Hawley P. & P. Co.*, *supra*, or was compensable in respect to covered employment, *Robertson v. State Industrial Acc. Com.*, 1925, 114 Or 394, 235 P 684, and the many other cases cited by Lafky and Lent, *supra*. A disease not caused by accident had been neither actionable or compensable. In respect to non-covered employees the legislature intended to continue that distinction.

It follows that when the legislature said that the Employer's Liability Act shall not apply to actions arising out of occupational disease that was the meaning intended.

I also dissent from the majority determination withdrawing the question of common law negligence from the jury.